Anderson, J.,
delivered the opinion of the court.
On the 26th of August, 1865, A. G. Taylor made his note at four mouths, for two thousand specie dollars, to Crews, Rodenhimer & Co., negotiable and payable at the office of discount and deposit of the Farmers Bank of Virginia at Danville, which was endorsed by said Crews, Rodenhimer & Co., “credit drawer.” This note was negotiated by the bank, and the amount of it paid in gold to the maker of the note, A. G. Taylor. It was afterwards, together with all the books, notes and assets of the bank, by a resolution of the board of directors of September, 1865, turned over by William S. Patton, cashier, to William II. Macfarland, president of the Farmers Bank of Virginia (the mother bank), who placed *352 this note, with all the other notes and evidences of debt due the bank at Danville, in the hands of the said William S. Patton for collection, who-was to be compensated by a percentage on the amount of his collections. It appears from the notarial protest that at the request of said William S. Patton, cashier, the said note was presented on the 29th of December, 1865, the date of its maturity, at the office of discount and deposit of the Farmers Bank of Virginia at Danville, and demand made of payment, which was refused, and that the same was thereupon protested for non-payment, of which notice was given the next day to the maker and endorsers by delivering to each a copy thereof in person.
On the 19th of January, 1867, the president and directors of the Farmers Bank of Virginia, pursuant to the requirement of the act of assembly of 12th of February, 1866, and to the authority with which they were invested by said act, made a deed conveying all the assets of the bank, real and personal, all debts, choses in action, bills, notes, accounts, and other evidences of debt, &c., wheresoever situated, to John M. Goddin and Samuel C. Bobinson in trust for the purposes therein named, and authorized them to sue in the name of the bank for the recovery of the same. And on the 11th of September of the same year, the said trustees caused this suit to be instituted in the name of the Farmers Bank of Virginia for their benefit. The defendants demurred to the declaration, filed a plea of nil debet, a plea of nul tiel corporation, and three other special pleas, which were ultimately rejected by .the court, and upon the twro first pleas the plaintiff took issue. The plea of nil debet ivas accompanied with a special affidavit of defendants.
The demurrer was overruled; and upon the trial of the issues on the pleas, the plaintiff offered to read to the jury the note in controversy, without having intro *353 duced any proof; to which the defendants objected; but the court overruled the objection and permitted the note to be read to the jury; and the defendants excepted. JBy the statute (Code of 1873, ch. 167, § 39, p. 1094), proof of the handwriting of the maker and endorser cannot be required unless the fact be denied by an affidavit with the plea which puts it in issue. The plea of nil debet is not sworn to, and though it puts in issue the handwriting of the maker and endorser of the note, proof of the handwriting cannot be required unless it is denied by an affidavit with the plea, and if not so denied it may be given to the jury in evidence without proof. Now, the affidavit of the defendants does not deny the handwriting of the maker or endorsers of the-note. Though it denies that they endorsed the note, it does not deny that the endorsement is their handwriting. On the contrary, the affidavit admits that it is the endorsement of the defendants, and affirms that because of the changes and alterations of the note since they endorsed it, the note upon which suit is brought is not the same note they endorsed, and therefore that the endorsement of the note declared on is not their endorsement. In other words, that they did not endorse the note declared on, and which was offered in evidence, because by material alterations of it it is not the same note they endorsed. This is plainly the affidavit in effect. It does not deny the handwriting of the signature to the note, or of the endorsement, or that they are genuine, but rather that, although they are genuine, they were not attached to the note which was offered in evidence, but to a different note—i^e note which they endorsed having been so changed by subsequent material alterations that it is not the same note which they endorsed. This is plainly the purport of the affidavit, and it pro *354 ceeds to slate in what those changes and alterations consist.
It affirms that the note when made and endorsed, &c., was not stamped with the revenue stamp required by the act of congress of the 1st of July, 1862, or with any revenue stamp. But that act was not in force when the note in controversy was made and endorsed. It wras in force only until the 1st day of August, 1864, (Bump’s Internal Revenue Laws, p. 306,) and the withholding the stamp when the note in controversy was made, to-wit: on the 26th of August, 1865, could not have been a violation of that act. And though it was not stamped with any other revenue stamp, it does not affirm that there was any act of congress which required it, and which was thereby violated. There wras an act of congress in force when the note in controversy was made, endorsed, &c.—the act of 1864 as amended by the act passed on the 3d of March, 1865, but which was materially different from the act of 1st July, 1862, which the defendant relied on. (See U. S. Statutes at Large, vol. 13, pp. 481-2.) This act provides, in substance, that any person who shall make, sign or issue any instrument, document or paper of any kind, or shall accept, negotiate or pay any bill of exchange, draft or order, or promissory note for the payment of money without the same being duly stamped or having thereupon an adhesive stamp for denoting the duty chargeable thereon, with intent to evade the provisions of this act, shall for every such offence forfeit the sum of $50, and such instrument shall be deemed invalid and of no effect. But to this enactment is a proviso: that hereafter in all cases of omission to affix the stamp required by law at the time of making and issuing the instrument, any party having an interest therein who shall he subsequently desirous of affixing such stamp to said instrument, may appear before the collector of the district, who shall, upon the payment of the price of the proper stamp *355 and the penalty of $50, affix the proper stamp to such instrument, and note upon the margin thereof the date of his so doing and the fact that such penalty has been paid. That is precisely what was done in this case. And it is further declared by said act that “ such instrument shall thereupon be deemed and held to be valid to all intents and pui’poses as if stamped when made or issued.”
The only ground of exception to the'ruling of the court, set out in the bill of exceptions, is, that the plaintiff was allowed to give the note in evidence 1o the jury without proof. "What pi’oof was necessary ? Before the statute, ch. 167, § 39, Code of 1873, supra, proof of the signatures of the maker and endoi’sers—that is, of their handwriting—would have entitled the plaintiff to give the noté with the endorsement in evidence to the jury. But now, since the statute, such proof, is not required unless the plea is accompanied with an affidavit'which denies that it is the handwriting of the maker and endorsers. And we. have seen that the affidavit tiled with the plea of nil debet does not deny the handwriting or the signatures. Such proof was therefore unnecessary to allow its introduction in evidence. But the certificate of evidence shows that the note and its endo3’sement was afterwards, in the progress of the cause, proved; so that if there had been eri’or in giving it to the jury without proof it was afterwards corrected.
And taking the affidavit to be true that it was not stamped at the time it was made or endoi’sed or pi’o-tested, or when notice was given of the protest, it was not inadmissible as evidence on that ground. The provision of the act of congress does not apply to state courts. Congress has no power to declare by law what shall or shall not he evidence in a state court. Hale v. Wilkinson, 21 Gratt. 75, and cases cited; Bump's Internal Revenue Laws, p. 327, note a and cases cited. But it was stamped, and in the mode required by the act of *356 congress, and that appeared by endorsement on the paper itself.
One of the pleas put in issue the fact of the existence of the bank as a corporation in whose name the suit was brought; but the plea was not sworn to, and was not filed with an affidavit denying the existence of the bank as a corporation. Proof consequently of its existence as a corporation was not necessary to the admissibility of the note in evidence; and the court is of opinion upon every grouitd that there was no error in permitting the plaintiff to give the note with the endorsements on it in evidence to the jury.
If it be within the constitutional power of congress to declare domestic contracts, entered into between citizens of a state, under state laws, and which have no bearing upon matters exclusively cognizable by the federal authorities, to he invalid and of no effect in the state courts, on which we deem it unnecessary to express an opinion in this ease, we are of opinion that the note in controversy was not made void and of none effect by the act of congress, because it was unstamped at the time it was made, or endorsed, or protested, or when notice of protest was given. It was only made invalid by such ofnissions, and then only conditionally, when they were with intent to evade the. I no; that is, to defraud the government out of its revenue; which, to invalidate the instrument, must be shown. And being a charge of fraud, and the act being punitive, all reasonable presumptions should be in favor of the party charged. In this case it does not appear that the note was unstamped with any intent to evade the law; nor can it be implied from the payment of the penalty of fifty dollars; nor is it an adjudication by the internal revenue collector, that the withholding of the stamp was with such intent. To relieve the party interested, who desires to affix the stamp to prevent a forfeiture, he is required to pay the penalty of fifty dollars *357 to the collector, whether the stamp was withheld with intent to evade the law or not. And the collector is only authorized to release the penalty upon affidavit that it was omitted without any wilful design to defraud the United States when the application is made within twelve calendar months after making or issuing the instrument. In this case the application was made on the 9th of June, 1870, more than four years after the note was made,endorsed and protested; so that the bank had lost its right to be released from the penalty, upon making the affidavit required, by its delay in making the application. And the collector had no authority to release it, however convinced he may have been that there was no intent to defraud the government or to evade the law. But the hank was entitled by the terms of the act to have the instrument stamped, and to be relieved from the forfeiture, by the payment of the price of the stamp, and the penalty of $50; and after that lapse of time, only by the payment of the penalty, were it ever so evident, and though he were perfectly conscious that the stamp was not withheld with any intent to evade the law. The payment of the penalty in this case, therefore, cannot imply an acknowledgment by the bank that the stamp was withheld with intent to evade the law. Nor can the collection of the penalty, under the circumstances, imply an adjudication by the collector that the stamp had been withheld with such intent, inasmuch as he had no authority to affix the stamp, however innocent he might regard the parties in withholding it, unless the penalty was paid. The payment of the penalty under the circumstances of this case does not, therefore, even tend to show that the omission to stamp -was with intent to evade the law, and there is no proof in the cause tending to establish such an intent. And it being necessary to show such intent by the term of the act of congress, to invalidate the instrument, the jury did not err *358 in treating it as a valid instrument; and the remark of the court, which seems to have been addressed to the bar, . “ that it was immaterial whether the note had ever been stamped or not,” though erroneous, and may have had influence upon the jury in coming to the conclusion they did, yet, as they came to a right conclusion, and such as-they ought to have reached, if such remark had not been made, it is no ground for setting aside the verdict and reversing the judgment.
The court is also of opinion that the court did not err in striking'from the record the three last pleas, third, fourth and fifth, and in subsequently overruling the defendants’ motion to reinstate them. The third and fifth pleas are severally predicated of the invalidity of the note and endorsement, because the note was not stamped at the time it was made, or endorsed, or protested, or when notice of the protest was given, 'with intent to defraud the government, blow, it appears by the certificate of the collector noted on the margin of the note, that it was subsequently stamped in the mode prescribed and authorized by the act of congress; by reason whereof, as expressly declared by said act, “ such instrument shall thereupon be deemed and held to be as valid to all intents and purposes as if stamped when made or issued.” It may well be-questioned whether said pleas were good without negativing the fact that they had been post-stamped and the penalty of $50 paid before the commencement of this suit, in accordance with the provision of the act of congress aforesaid. But, however that may be, it was entirely competent for the defendants to rely on the same matters in evidence under the issue of ml d'ebet, which are set out in their pleas, and were consequently not prejudiced by the rejection of the pleas, especially as it appears that if the said pleas had been received and issue taken on them, they could not have- *359 been sustained by the evidence. The fourth plea denies that the said note ever was stamped in the manner and form required by the act of congress, and reiterates the charge of intent to evade the law. This matter of defence could also have been given in evidence under the issue of nil debet, and is plainly unsustained by the evidence; and the rejection of this plea has therefore not prejudiced the defendants; and the rejection thereof, and the third and fifth pleas for these reasons, would not warrant the reversal of the judgment.
It was not made the duty of the bank to affix the stamp after it ivas negotiated and money paid, but it had the privilege of doing so anytime thereafter; and only upon its failure to do so would the note become invalid and of no effect. To have had.it stamped in the mode prescribed and authorized by the act of congress, the day before the suit upon it was brought, was as much the right and privilege of the bank and as efficacious as t'o have stamped it at the time it was protested, or when notice of the protest was given. If invalidity at any time was the result of its not being stamped, it was primarily the fault of the maker and the endorsers, who, upon the faith of it as a valid security, drew from the bank §2,000 in gold; and the endorsers, by whose order it was paid to the maker, ought not to be relieved from the obligation to return it to the hank upon the plea that the note was not stamped.
The court is further of opinion that in the light of this transaction as we have viewed it, there is no ground for the assumption of the plaintiffs in error, that the endorsement made on the note by the revenue collector was such an alteration of the instrument as invalidated it in the hands of the holder. The maker and endorsers knew when the note was *360 made and issued, endorsed and negotiated, that the same authority which required the note to he stamped, authorized the holder, if it had not been previously stamped, any time after it had been negotiated, to have it stamped precisely in the way the note in controversy was stamped. If the note was invalid for want of a stamp, it was invalid when it was negotiated, and if the holder, after its negotiation and delivery, had immediately affixed a stamp to it in the absence of the maker and endorsers, it might as well be contended that it was such an alteration as invalidated the note.
If it was material for the defendant to have been allowed to introduce proof to show that the stamp was withheld with intent to defraud the government—. which, from.the view we have presented, would not seem to have been material, inasmuch as if there had been such fraudulent intent it was- atoned for by the hank by paying the penalty, and the note was stamped in the mode prescribed by the act of congress, and validated, just as it would have been if it had been stamped at the time it was made and issued—■ yet we do not understand the ruling of the court to have excluded evidence for such purpose.
The court is further of opinion that there is no error to the prejudice of the plaintiffs here in the instruction given by the court to the jury as to what constituted the office of deposit of the bank when the note was presented for payment and protested. Nor is there any discrepancy in the allegation and proof as to the presentation, demand, and protest of the note. That it was presented and protested at the office of discount and deposit of the bank is proved by the certificate of the notary,-and there is no proof to the contrary. The proof is, that the office of William S. Patton, the cashier of the bank in Danville, *361 was then used as the office of deposit of the hank and for transacting its business, and it had no other at that time.-
The court is also of opinion that under the act of assembly, Code of 1873, ch. 56, § 31, p. 543, this suit was properly brought in the name of the Farmers Bank of Virginia for the benefit of the trustees, who were trustees for the bank as well as its creditors, and who were authorized by the deed creating the trust to sue in the name of the bank. Upon the whole the court is of opinion that there is no substantial error in the judgment of the circuit court and to affirm the same.
Judgment affirmed.